OPINION OF THE COURT
Gary F. Marton, J.
The above-captioned is an alleged “illegal lockout” proceeding brought pursuant to RPAPL 713 (10). Petitioner asserts that he was the tenant of the certain premises and that respondents Baumblit and Back On Track (BOT) wrongly deprived him of possession thereof. Baumblit and BOT deny the same and assert that petitioner was a licensee whose license to be at the premises BOT properly terminated. Respondent Luckie, who occupies the premises previously occupied by petitioner, asserts that he should be left alone because he is an innocent bystander to the quarrel between petitioner and BOT.
Now, after considering the testimony and the other evidence at the trial herein, the court makes the following findings of fact, reaches the following conclusions of law, and grants petitioner a judgment of possession. A warrant may issue forthwith without stay of execution.
Petitioner testified that on April 3, 2014 respondent BOT rented to him the bottom right bunk on the second floor at 456 Glenmore Avenue, that petitioner moved in that day after signing a number of papers that BOT presented to him, that he did not read the papers because his reading skills were insufficient for that task, and that he paid rent monthly beginning at that time. This testimony was undisputed and the court finds that it was credible.
The court finds that six months later, i.e., on October 8, 2014, petitioner was asked by Baumblit, an employee of BOT, to pay the rent for October 2014, that petitioner responded that he would pay that rent in two or three weeks, and that Baumblit then told petitioner that he had to move out. The court finds that the police were called to the premises at least twice on October 8, 2014, that they went to the premises twice, that the police were called on October 9, 2014 and October 10, 2014 and *639 that the police went to the premises on those dates, and the court finds that on each of those occasions the police either told petitioner that he did not have to leave or else told BOT’s employees that petitioner did not have to leave, and that to compel petitioner to leave, BOT would have to go to court.
The court finds that during the day on October 11, 2014 petitioner was arrested in Manhattan for selling loose cigarettes in that borough, that he did not return to the premises until that night, that upon his return to the premises petitioner found respondent Luckie in his bunk, that BOT had assigned Luckie to that bunk, and that Luckie declined to surrender that bunk to petitioner. The court finds that since then, petitioner has been sleeping either on a mattress on the floor in the living room at the premises or on the floor in the living room at the premises.
In pertinent part, RPAPL 711 provides:
“A tenant shall include an occupant of one or more rooms in a rooming house or a resident, not including a transient occupant, of one or more rooms in a hotel who has been in possession for thirty consecutive days or longer; he shall not be removed from possession except in a special proceeding.”
In pertinent part, Administrative Code of the City of New York § 26-521 (a) provides that it “shall be unlawful for any person to evict or attempt to evict an occupant of a dwelling unit who has lawfully occupied the dwelling unit for thirty consecutive days or longer” by the use of force or by a threat to use force or by engaging or threatening to engage in conduct that would interfere with the occupant’s peaceful enjoyment of the premises. In pertinent part, Administrative Code § 26-522 (a) (1) provides that “ £[d]welling unit’ means a dwelling unit as such term is defined in subdivision thirteen of section 27-2004 of the housing maintenance code.” Section 27-2004 (a) (13) of the Housing Maintenance Code (Administrative Code, tit 27, ch 2) provides that a “[d]welling unit shall mean any residential accommodation in a multiple dwelling or private dwelling.”
The court holds that the bunk was a “residential accommodation” and that in contravention of the foregoing statutes BOT wrongfully deprived petitioner of his tenancy. The court directs BOT to restore petitioner to that tenancy forthwith, and the court grants petitioner the other relief set out in the second paragraph above.
Luckie is an innocent bystander here. Petitioner did not allege, much less offer evidence, that Luckie was in cahoots with *640 BOT or otherwise played a role in the illegal eviction that took place here. Nonetheless, Luckie has been at the premises for a relatively brief period of time, especially when his few weeks are compared to petitioner’s six months; very significantly too in this court’s view is the fact that Luckie knew, or reasonably ought to have known, virtually from the beginning (i.e., not later than his conversation with petitioner on the night of Oct. 11, 2014) that his claim to the bunk was in jeopardy. In other words, the court holds that the equities here favor petitioner over Luckie.